[Cite as *Brown v. Dayton*, 2012-Ohio-3493.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

RAYMOND A. BROWN, JR.          :

    Plaintiff-Appellee          :          C.A. CASE NO. 24900

vs.          :          T.C. CASE NO. 10CV6265

CITY OF DAYTON, OHIO          :          (Civil Appeal from
                               Common Pleas Court

    Defendant-Appellant          :

. . . . . . . . .

**O P I N I O N**

Rendered on the 3rd day of August, 2012.

. . . . . . . . .

Kelli A. Bartlett, Atty. Reg. No. 00077263, 333 W. First Street, Suite 500A, Dayton, OH 45402
    Attorney for Plaintiff-Appellee

John J. Danish, City Attorney; John C. Musto, Atty. Reg. No. 0071512, Asst. City Attorney, 101 W. Third Street, P.O. Box 22, Dayton, OH 45401
    Attorneys for Defendant-Appellant

. . . . . . . . .

CANNON, J., sitting by assignment:

{¶ 1}     Appellant, the city of Dayton, appeals the judgment of the Montgomery County Court of Common Pleas reversing the Department of Building Services Board of Public Nuisance Appeals' decision ordering appellee, Raymond A. Brown, Jr., to vacate his apartment because of a public nuisance.  For the reasons that follow, the judgment is

affirmed.

{¶ 2}   Brown resided on the seventh floor of an apartment complex, subsidized by the Department of Housing and Urban Development.   Dayton Police executed a warrant for Robert Matson's apartment on the ninth floor of the complex.   Brown was a visitor in Matson's apartment during the ensuing search.   Dayton Police uncovered a small amount of narcotics (1.1 grams of heroin) in Matson's apartment.   After the search concluded, Dayton Police personally served Brown with notification that Brown's apartment constituted a public nuisance due to the felony drugs found in Matson's apartment.   The order mandated that Brown abate the public nuisance by vacating his apartment.

{¶ 3}   The next day, Brown appealed the public nuisance finding by submitting a written request for a hearing on the question of whether a public nuisance existed as applied to his apartment.   Brown soon thereafter filed a second written request.   Ultimately, the Department of Building Services Board of Public Nuisance Appeals (the "Board") scheduled a hearing.   However, Brown alleges that neither he nor his counsel received notice of the hearing.

{¶ 4}   The hearing ensued without Brown or his attorney.   Matson was in attendance.  During the 17-minute hearing, Detective Shirley Rockwell read the police report and Matson attempted to defend against the nuisance finding.   The Board determined that a public nuisance existed and denied Matson's appeal.   The Board concluded that Brown was not in good faith innocent of knowledge of the use of such property as a nuisance.   It determined that "with reasonable care and diligence, Brown could have known about the existence of a public nuisance."   The Board confirmed the validity of the nuisance order and determined

that Brown must vacate his apartment starting on June 24, 2010, for a period of 365 days.

{¶ 5} Soon thereafter, Brown became aware that his appeal hearing had been scheduled and completed. Brown filed a motion to stay the nuisance abatement order, which was denied. Brown then initiated an administrative appeal to the trial court. On October 25, 2011, the trial court found the Board's decision was entered in error because: (1) Brown was not served with proper certified-mail notice of the hearing as required by Dayton Revised Code of General Ordinances ("R.C.G.O.") Section 152.05(C); (2) the Board's hearing was not held within 30 days as required by R.C.G.O. Section 152.07, and thus the Board lost jurisdiction over the matter; and (3) the Board's conclusion that Brown knew or should have known of Matson's drug use was not supported by the record. However, at the time the trial court issued its decision, the order had expired.

{¶ 6} The city of Dayton timely appeals and asserts three assignments of error for consideration by this court. Its first assignment of error states:

{¶ 7} "The Trial Court lacked jurisdiction over this matter at the time it issued its decision because the matter had become moot."

{¶ 8} Under its first assignment of error, the city of Dayton contends the trial court lacked subject matter jurisdiction when it issued its decision because the matter had become moot; that is, the nuisance order at issue expired four months prior to the trial court's decision. Although Brown concedes the order expired, he argues that several exceptions apply in this case that render the mootness doctrine inapplicable.

{¶ 9} When a trial court dismisses a case as moot, it is declining to exercise jurisdiction over the matter. In such a situation, the issue of mootness presents a question of

law which is reviewed under a de novo standard. *See Athens Cty. Commrs. v. Ohio Patrolmen's Benevolent Assn.*, 4th Dist. Athens No. 06CA49, 2007-Ohio-6895, ¶ 45 (applying de novo standard in reviewing a trial court's dismissal of a case as moot). Conversely, "the decision whether or not to hear an otherwise moot case is within the trial court's discretion and will not be reversed absent an abuse of that discretion." *Robinson v. Indus. Comm.*, 10th Dist. Franklin No. 04AP-1010, 2005-Ohio-2290, ¶ 7, citing *Lariscy v. Franklin Park Mall, Inc*, 6th Dist. Lucas No. L-85-245, 1986 WL 1696 (Feb. 7, 1986) and *Peeples v. Dept. of Corrections*, 10th Dist. Franklin No. 95API03-337, 1995 WL 600520 (Oct. 12, 1995) (noting that a trial court may, in its discretion, render judgment on moot arguments when it determines an exception applies). Here, though the trial court did not squarely address the mootness question; it clearly elected to decide the issue and render a judgment even though the order had expired. Thus, this court must decide the issue under an abuse of discretion standard.

{¶ 10} The concept of mootness is firmly rooted in Article III, Section 2, of the United States Constitution, conferring power upon courts to hear cases or controversies. *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791, 600 N.E.2d 736 (1991). Mootness presents a question of jurisdiction because a lack of an actual case or controversy between the parties renders it necessarily impossible for a court to grant any meaningful relief. *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910). Obviously, a judgment cannot be carried into effect when the underlying issue at hand is abstract, hypothetical, or otherwise potential. Although Ohio does not have a constitutional counterpart to Article III, Section 2, courts throughout Ohio continue to follow the long-standing concept of judicial restraint, mandating

that courts entertain jurisdiction only over questions that are not moot. *Flaherty* at 791.

{¶ 11} The question of mootness, however, cannot always be decided as a matter of law and several limited exceptions to the mootness doctrine exist whereby a court may entertain jurisdiction in order to consider the issue. A trial court may factually determine that the matter is capable of repetition, yet evade review; that the matter produces adverse collateral consequences; or that the matter involves an important constitutional question. Brown concedes the subject administrative order had expired at the time the trial court issued its decision. Brown therefore relies on two of these exceptions to advance the proposition that the matter was not moot at the time the trial court rendered its decision. These exceptions and arguments shall be explored individually.

{¶ 12} With regard to the first of the exceptions, Brown does not argue the matter is capable of repetition, yet evading review.

{¶ 13} With regard to the second exception, Brown contends there are potential adverse collateral consequences that could befall him in the future from the administrative order. In assessing collateral-consequences questions, courts must highlight the fine line which distinguishes pure speculation from reasonably possible adverse scenarios. In this case, there are potential adverse collateral consequences which act as an exception to the mootness doctrine, permitting the trial court to assess the propriety of the administrative order. Given the serious nature of the claimed nuisance (felony drugs), and the significant consequence of the nuisance finding (eviction for 365 days), Brown may clearly face future consequences, similar to a criminal defendant experiencing the consequences of a conviction or judgment, despite the court's sentence having been satisfied. *Solon v. Bollin-Booth*, 8th

Dist. Cuyahoga No. 97099, 2012-Ohio-815, ¶ 11. In this case, despite the expiration of the penalty period imposed by the Board, the order may affect Brown's ability to qualify for government-subsidized housing and may also negatively affect his ability to lease *any* property.

{¶ 14} If a landlord or prospective lessor is able to review any of the documents associated with the public nuisance finding and abatement order, he or she will discover the nuisance to be related to felony drugs. Significantly, neither the order nor the notification makes it clear that these "felony drugs" were *not* actually found in Brown's apartment *or* in his possession. Instead, after a review of these documents alone, it can be reasonably inferred that Brown had drugs in his apartment. Furthermore, the amount of narcotics is not specified. Even if these documents cannot be accessed by the public, Brown will likely continually bear the duty to disclose this information on any application for housing he may encounter.

{¶ 15} The city of Dayton argues the potential "negative collateral consequences" exception does not apply to an expired civil order. In support, it points to this court's decision in *Erbes v. Meyer*, 2d Dist. Montgomery No. 23917, 2011-Ohio-3274. In *Erbes*, the appellant Noel Meyer, a deputy sheriff, appealed the trial court's judgment denying him Civ.R. 60(B) relief from a civil stalking protection order. *Id.* at ¶ 4. However, by the time Meyer appealed, the protection order had expired. *Id.* In his merit brief, Meyer argued that the existence of the civil protection order, although expired, caused harm to his reputation and denial of employment such that this court could still consider the propriety of the trial court's denial. *Id.* at ¶ 4, fn.1. This court declined to do so and dismissed the appeal as moot. *Id.* at ¶ 6.

**{¶ 16}** Here, the city of Dayton argues that, because the appellant in *Erbes* claimed he suffered actual harm from the expired order and the collateral consequences exception did not apply, the exception should similarly not apply here because Brown is only asserting the mere possibility of some future harm. However, *Erbes* presents an entirely different issue from the case sub judice. The question in *Erbes* was whether the matter was moot on appeal, allowing this court to independently assess the record and make a determination concerning whether to dismiss the case. Here, however, the question is whether the trial court abused its discretion in addressing what may have otherwise been a moot question. Additionally, this court noted that the appellant in *Erbes* hardly pursued the matter even before it became moot, exerting little effort to challenge the civil protection order at the trial court level. *Id.* In addition, it found the appeal lacked merit because the appellant never objected to the magistrate's recommendation and thereby waived all but plain error. *Id.* Here, Brown vigorously attempted to fight the nuisance abatement from the moment he received notification of the public-use nuisance order. Brown also attempted to stay the order, which was denied. Further, *Erbes* involves a civil protection order, whereas this case involves a public-use nuisance order which expelled Brown from his home.

**{¶ 17}** Because of the likely negative consequences this expired nuisance order will have on Brown's ability to find a place to live, we cannot say the trial court abused its discretion in proceeding to issue its ruling in this matter, as it may fall into the collateral consequences exception of the mootness doctrine.

**{¶ 18}** Finally, Brown argues this case involves questions of procedural due process rights—a constitutional matter of public and great general interest. Indeed, the trial court's

review of the Board's findings involved a serious matter: Brown had essentially been evicted from his home allegedly without any opportunity to provide a defense. Brown alleged he was forced to leave his apartment without the benefit of a hearing, or even notice of a hearing. The trial court could resolve the mootness issue in favor of addressing an alleged violation of procedural due process. This matter additionally falls into this exception.

{¶ 19} The city of Dayton argues that Brown's arguments are contradictory because Brown filed a motion to dismiss this appeal due to mootness while subsequently arguing in his response brief that the matter is not moot. However, these arguments are consistent with preserving the trial court's judgment which was entered in Brown's favor. Moreover, Brown's motion to dismiss does not address the collateral consequences or constitutional questions exceptions upon which he now relies.

{¶ 20} Thus, the trial court did not abuse its discretion in electing to address the issue, even though the order had expired, because it can reasonably be concluded that the expired order poses negative collateral consequences to Brown and the case involves important constitutional questions of procedural due process.

{¶ 21} The city of Dayton's first assignment of error is without merit.

{¶ 22} The city of Dayton's remaining assignments of error state:

> [2.] The Trial Court erred in finding that the Use Nuisance Appeals Board was required to conduct the appeal hearing within 30 days to maintain jurisdiction.

> [3.] The Trial Court erred in finding that the City was required to serve Appellee with notice of the appeal hearing via certified mail.

{¶ 23} The trial court found the Board's decision was entered in error for three reasons. However, the city of Dayton attacks only two of the three conclusions entered by the trial court. Even if we were to concur with all aspects of the remaining assignments of error, the city of Dayton does not appeal from the trial court's primary finding, to wit: a substantive determination that there was no substantial, reliable, and probative evidence to support the Board's conclusion that Brown knew or should have known about the drugs in Matson's apartment. Instead, the city of Dayton only attacks the trial court's determination on the issues of jurisdiction and notice. Thus, even if this court were to find error in the trial court's conclusions holding that the Board did not have jurisdiction and that Brown should have been served with notice of the hearing via certified mail, the trial court's ruling that a public nuisance di*d not* exist because the evidence did not support such a finding would remain. The city of Dayton's remaining assignments of error are therefore moot.

{¶ 24} The city of Dayton has not assigned as error the trial court's ruling that the record does not support a conclusion that a nuisance existed as applied to Brown; has not framed it as an issue for review where an assignment of error could even be inferred; and does not attack it anywhere in the body of its merit brief. Accordingly, Brown has not defended this portion of the ruling. Any disposition on the above-framed assignments—collateral to the underlying finding that there was no nuisance—would therefore strictly be an intellectual, academic exercise. As a general rule, appellate courts do not assign errors for parties, do not make assumptions as to the portion of an entry an appellant may have intended to attack, and do not usurp a potential appellate strategy employed by an appellant. Consequently, we

cannot give relief to the city of Dayton under its second and third assignments of error, and they are dismissed as moot.

{¶ 25} The judgment of the Montgomery County Court of Common Pleas is hereby affirmed.

FAIN, J., And FROELICH, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

**Copies mailed to:**

**Kelli A. Bartlett, Esq.**
**John C. Musto, Esq.**
**Hon. Steven K. Dankof**