[Cite as *State ex rel. R.L. Hawk, L.L.C. v. Troy Planning Comm.*, 2021-Ohio-327.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO ex rel. R.L. HAWK, LLC | : | |
| | : | |
| | : | Appellate Case No. 2020-CA-11 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 19-495 |
| v. | : | |
| | : | (Civil Appeal from |
| CITY OF TROY, OHIO PLANNING COMMISSION, et al. | : | Common Pleas Court) |
| | : | |
| | : | |
| Defendants-Appellants | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2021.

. . . . . . . . . . .

PATRICK J. JANIS, Atty. Reg. No. 0012191 and JEREMY M. TOMB, Atty. Reg. No. 0079664, 124 West Main Street, Troy, Ohio 45373
      Attorneys for Plaintiff-Appellee

JARED B. CHAMBERLAIN, Atty. Reg. No. 0090785, 215 West Water Street, Troy, Ohio 45373
      Attorney for Defendants-Appellants

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** The trial court held that Defendants-Appellants, City of Troy, Ohio Planning Commission ("TPC") and City of Troy, Ohio, failed to comply with R.C. 711.09(C) when considering the application of Plaintiff-Appellee, R.L. Hawk, LLC ("Hawk"), for a plat plan.[1] The court therefore rendered summary judgment in Hawk's favor, concluding that Hawk was entitled to relief under the statute.

**{¶ 2}** According to TPC, this case is moot because TPC did, in fact, issue a unanimous recommendation for approval of the plat plan. In addition, TPC argues that the trial could should have applied doctrines of laches and waiver because Hawk voluntarily followed TPC's procedures during three applications, and Hawk only applied for preliminary plat approval rather than final approval. Finally, TPC contends that the trial court erred in concluding that the ordinance in question conflicts with R.C. 711.09(C).

**{¶ 3}** For the reasons that follow, we find no error on the trial court's part. Accordingly, the judgment of the trial court will be affirmed.


I.   Facts and Course of Proceedings

**{¶ 4}** The relevant facts in this case are not disputed. In 2000, the Troy City Council and TPC approved the Villages of Concord ("VOC") subdivision, which was laid out as a private condominium community. Part of the development was completed in the mid-2000s, including 20 condominiums, a common area (with a 2.565-acre lake), and a clubhouse. Of the original 16 acres, slightly more than 10 acres remained for development. As a result, in 2018, Hawk proposed creating 35 building lots that were to be developed as single-family residences.

---

[1] For ease of discussion, we will refer to Appellants collectively as TPC.

{¶ 5} In March 2018, Hawk submitted a plat plan for VOC to TPC, along with a written application to the Troy City Engineer for review of the plat. However, TPC tabled the VOC Plat Plan from March 2018 until August 2018 because it wanted more information.

{¶ 6} On August 22, 2018, TPC denied the application because it wanted an easement across two private properties to permit an ingress and egress road. As a result, Hawk submitted a revised VOC Plat Plan to TPC in January 2019. Although the Troy Development Staff concluded that the Plan appeared to comply with the city's Zoning Code and Subdivision Regulations, the staff suggested that the application be tabled so that notice of the preliminary plan proposal could be given to all current unit owners. TPC then tabled consideration of the application at its February 27, 2019 meeting. At the TPC meeting on March 13, 2019, the application was again tabled because TPC wished to seek guidance from the Fire Chief and Troy Law Director based on questions adjoining property owners had raised about administration of a homeowner's association on adjoining property.

{¶ 7} Subsequently, the Troy Law Director reported that complaints between property owners were only civil issues between the parties. The issue instead was whether the VOC Plan satisfied subdivision regulations, and City staff had determined that the Plan did satisfy the regulations. In a report dated March 13, 2019, the Troy Development Staff recommended that TPC approve the VOC Plan as submitted. However, on March 27, 2019, TPC denied the application without providing any grounds for the denial.

{¶ 8} Hawk again submitted another VOC Plat Plan on September 17, 2019, but

TPC did not take any action on the plan. Hawk then, through counsel, sent a letter to TPC and the Troy City Council on November 18, 2019, demanding that TPC issue a certification that the subdivision plans were approved and appropriate for recording by operation of law under R.C. 711.09(C) due to TPC's failure to take action within 30 days after submission. Neither TPC nor the City of Troy responded. However, on December 2, 2019, the Troy Zoning Inspector sent Hawk a letter indicating that TPC had recommended approval of the Preliminary Plat for VOC on November 27, 2019, with two conditions. These conditions were:

1. All internal streets within this subdivision are private and will be maintained by the Home Owners Association and are dedicated as utility easements.

2. Before the final Plat approval, Declaration and Regulations of a Home Owners Association shall be created so as to provide a mechanism for the maintenance of the private streets and roadways and the enforcement of the payment of such expenses equally by all owners of lots in the subdivision.

Verified Complaint, ¶ 26. Quoting Ex. 5 attached to the Complaint.

{¶ 9} On December 16, 2019, Hawk filed a verified complaint against TPC, seeking a declaratory judgment and a writ of mandamus. TPC then filed a motion to dismiss based on Hawk's alleged failure to exhaust administrative remedies and on the fact that Hawk had an adequate remedy in the ordinary course of law by appealing from TPC's administrative order.

{¶ 10} On January 16, 2020, Hawk filed a motion to consolidate this action with his

administrative appeal, which was also pending. Hawk also filed a motion for summary judgment in February 2020. Subsequently, on March 23, 2020, the trial court overruled the motion to dismiss in part and sustained it in part, holding that Hawk did not need to exhaust administrative remedies, but that he had an ordinary remedy and was not entitled to extraordinary relief in mandamus. The same day, the court also overruled Hawk's motion to consolidate the two actions.

{¶ 11} TPC filed its answer in April 2020 and then filed its own motion for summary judgment. On August 5, 2020, the trial court granted summary judgment in Hawk's favor. The court held that the case was not moot and that TPC's later conditional approval conflicted with R.C. 711.09(C) because the Troy Subdivision Regulations theoretically provided an unlimited consideration period for plat plans. The court therefore held that Hawk was entitled to the relief provided by R.C. 711.09(C). In addition, the court rejected the equitable defenses that TPC raised. TPC then timely appealed.

## II. Mootness

{¶ 12} TPC's First Assignment of Error states that:

The Trial Court Erred as a Matter of Law in Granting Summary Judgment to Plaintiff Where Appellee in This Case Never Requested Approval of a Final Plat Plan, and Appellee in This Case Is Not Prejudiced and the Matter is Moot Where He Received an Unanimous Recommendation for Approval After Submitting His Demand Letter to Appellants.

{¶ 13} Under this assignment of error, TPC argues first that this case is moot

because Hawk, in fact, received a unanimous recommendation for approval of his preliminary plat plan application shortly after the November 18, 2019 demand letter. The trial court found, however, that a justiciable controversy existed because Hawk completed his plat submission on September 27, 2019, and TPC did not act on it until November 27, 2019, leaving an issue as to whether Hawk was entitled to relief under R.C. 711.09(C).

{¶ 14} In reviewing summary judgment decisions, we conduct de novo review, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." S*tate ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶ 15} As indicated, the action before us was decided on the basis of declaratory judgment. The elements of a declaratory judgment are: "(1) A real controversy between the parties; (2) which is justiciable in character; and (3) speedy relief is necessary to preserve the rights of the parties." *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973).

{¶ 16} Under the mootness doctrine, " 'American courts will not decide * * * cases in which there is no longer any actual controversy.' " *In re A.G.,* 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37, quoting Black's Law Dictionary 1100 (9th

Ed.2009). This is because courts have no duty "to decide purely academic or abstract questions." *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791, 600 N.E.2d 736 (10th Dist.1991), citing *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910). Dismissals on the basis of mootness present questions of law and are reviewed de novo. *Brown v. Dayton*, 2d Dist. Montgomery No. 24900, 2012-Ohio-3493, ¶ 9.

**{¶ 17}** This case involves the application of R.C. 711.09. R.C. 711.09(A)(1) states that "when a city planning commission adopts a plan for the major streets or thoroughfares and for the parks and other open public grounds of a city or any part of it, or for the unincorporated territory within three miles of the corporate limits of a city or any part of it, then no plat of a subdivision of land within that city or territory shall be recorded until it has been approved by the city planning commission and that approval endorsed in writing on the plat. * * *"

**{¶ 18}** R.C. 711.09(C) further provides, in pertinent part, that:

The approval of the planning commission * * * required by this section, or the refusal to approve, shall be endorsed on the plat within thirty days after the submission of the plat for approval or within such further time as the applying party may agree to; otherwise that plat is deemed approved, and the certificate of the planning commission, * * * as to the date of the submission of the plat for approval and the failure to take action on it within that time, shall be issued on demand and shall be sufficient in lieu of the written endorsement or other evidence of approval required by this section. The planning commission, platting commissioner, or legislative authority of a village shall not require a person submitting a plat to alter the plat or any

part of it as a condition for approval, as long as the plat is in accordance with the general rules governing plats and subdivisions of land, adopted as provided in this section, in effect at the time the plat was submitted. The ground of refusal or approval of any plat submitted, including citation of or reference to the rule violated by the plat, shall be stated upon the record of the commission, commissioner, or legislative authority.

{¶ 19} The statute also provides for a right of action by an aggrieved party, who is to file an action in common pleas court within 60 days after the refusal. *Id.*

{¶ 20} After considering the record, we agree with the trial court that the case is not moot. TPC did not either endorse approval of the plat or refuse to do so within 30 days after Hawk submitted the plat. TPC therefore violated R.C. 711.09(C). The fact that TPC approved the plat plan later is irrelevant, because TPC did not just approve the plan; it added conditions. R.C. 711.09(C) is not ambiguous and does not allow a failure to comply to be cured by later approval with added conditions. The statute is quite clear: it indicates that if the planning commission does not either endorse its approval or reject the plan, the plan is *deemed* to have been approved.

{¶ 21} At oral argument, an issue arose concerning whether the Codified Ordinances of the City of Troy give TPC authority to add conditions as it did here. TPC contended that they do. With respect to this point, Part 11, Title Three, Ch. 1115, Section 1115.09 of the Codified Ordinances of the City of Troy states, with respect to "APPROVAL/DISAPPROVAL OF PRELIMINARY PLAT," that:

> (a) At the scheduled review meeting(s), the Planning Commission may take action as follows:

(1)  Approve.  The Commission may approve the Preliminary Plat and authorize the subdivider to proceed with preparation of the construction drawings and the final plat(s).

(2)  Table.  The Commission may table the proposed plat for further consideration.

(3)  Deny.  The Commission may deny the proposed plat for failure to comply with the regulations and standards specified herein.

**{¶ 22}** Thus, TPC had the ability to choose one of these three options; it did not have the option to issue approval with added conditions.  Section 1115.09(b) does state that "If a Preliminary Plat is tabled or denied, the subdivider and his consulting engineer may resubmit a new revised Preliminary Plat.  All required revisions stipulated by the Planning Commission must be satisfied by the subdivider before the Preliminary Plat can be resubmitted and reconsidered for approval."

**{¶ 23}** Thus, while TPC is not precluded from requesting revisions to a plan after denying approval, TPC did not follow the procedures under its ordinance.  Specifically, if TPC wanted to add additional conditions, it could have denied the application on a timely basis, with specific reasons, and could have asked Hawk to revise the plan.

**{¶ 24}** At oral argument, TPC also advocated that this case is moot because the conditions were merely used to assure compliance with regulations that were already in existence.  However, TCP did not point to any such regulations during oral argument or in its brief. We note that in making a related argument to the trial court, TPC referenced the preliminary plan, which contained additional covenants including: "Property owners are responsible for the maintenance of the privately owned roads and public access

easements" and dedication of utility easements. TCP Reply Brief, p. 5, fn. 24, referencing Exhibit 3 to the Verified Complaint., p. 12. While it may be true that the conditions were merely intended to assure compliance with the additional covenants contained in the preliminary plan, they were not redundant.

{¶ 25} In support of its contention that the case is moot, TPC relies primarily on two cases: *Keller*, 74 Ohio App.3d 788, 791, 600 N.E.2d 736, and *C & D Partnership v. City of Gahanna*, 10th Dist. Franklin No. 82AP-919, 1983 WL 3718 (Oct. 6, 1983), *aff'd*, 15 Ohio St.3d 359, 474 N.E.2d 303 (1984). However, these cases are distinguishable.

{¶ 26} In *Keller*, a company sued the Director of the Ohio Department of Administrative Services, alleging that he had given a contract bidder an unfair competitive advantage. *Id.* at 790. The trial court agreed and voided the bids on the items in question. However, the Director then awarded the contract to the plaintiff while the appeal of the trial court's decision was still pending. *Id.* Because the court of appeals could not afford further relief, it dismissed the appeal as moot. *Id.* at 791. Such is not the case here. As indicated, TPC added additional conditions to Hawk's plat plan.

{¶ 27} In contrast to the case before us, *C&D Partnership* was brought under 42 U.S.C. 1983 and sought compensatory damages against a city for delay in approving a final plat. *Id.* at *2. The case did not involve R.C. 711.09; instead, a local ordinance required council to take action within 30 days after a final plat was submitted. *Id.* at *3. The trial court agreed that "[t]he city had no authority to delay action" but also observed that "plaintiffs actually benefited from the delay, since the plat would have been disapproved had they not acquiesced." *Id.* at *4. TPC likewise argues here that Hawk was not prejudiced because TPC "likely" would have denied the application if it had timely

acted.   Appellant's Brief, p. 7.

**{¶ 28}** The court's observation in *C&D Partnership* was based on the facts in the case, which indicated that "C&D acquiesced to such postponement [of acceptance of the plat], but only because the Council and its members made it clear to C&D that if C&D did not acquiesce to such postponement, Ordinance No. 105-79 [approving the plat] would be defeated."  *Id.* at *2.   These are not the facts in the case before us.    Accordingly, the authority cited by TPC does not provide a basis for concluding that this case is moot.

**{¶ 29}** Based on the preceding discussion, the First Assignment of Error is overruled.


III.   Waiver

**{¶ 30}** TPC's Second Assignment of Error states that:

The Trial Court Erred When It Overruled Respondent's Equitable Defenses of Waiver and Laches Where Relator/Appellee Voluntarily Followed Appellants' Zoning and Planning Procedures Through Three Separate Applications, Thus Waiving and Unreasonably Delaying in His Assertion of Any Statutory Rights, and Where Appellants Cooperated With Appellee in Good Faith and in Reliance on His Request for a Preliminary Plat Approval.

**{¶ 31}** Under this assignment of error, TPC invokes the doctrines or defenses of laches and waiver, insofar as Hawk participated in the preliminary plan process for an extended period of time when he had constructive knowledge of his rights under R.C. 711.09.   The trial court rejected both defenses, noting that TPC's argument consisted of

"little more than conjecture borne of frustration." Aug. 5, 2020 Decision and Judgment Entry, p. 19. The court further commented that Hawk was entitled to demand certification under the statute, and that this result would not have occurred but for TPC's inaction. *Id.*

{¶ 32} "The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Citizens for Responsible Green Govt. v. City of Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 16.

{¶ 33} "Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 49. "A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver." *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 278-279, 690 N.E.2d 1267 (1998), citing *Andrews v. State Teachers Retirement Sys. Bd.*, 62 Ohio St.2d 202, 205, 404 N.E.2d 747 (1980).

{¶ 34} After considering the record and the applicable law, we agree with the trial court that neither equitable defense applies here. R.C. 711.09 has existed in its current form since 1997, and TPC would have been aware of the laws governing planning commissions. *See* H.B. 22, 1997 Ohio Laws File 51. There is no indication that Hawk misled TPC in any way or caused it to change its position. TPC could easily have avoided any problem by acting in a timely manner.

{¶ 35} In interpreting a very similar statute, the Supreme Court of Ohio stressed

that "the 30-day limitation * * * is designed to ensure prompt action to protect the developer from bureaucratic obstructionism. If the commission fails to act within that time, the plat is deemed approved [a]nd prime for recordation." *P. H. English, Inc. v. Koster*, 61 Ohio St.2d 17, 19-20, 399 N.E.2d 72 (1980), discussing R.C. 711.10.[2]

{¶ 36} Furthermore, in *Wesolowski v. Planning Comm.*, 2018-Ohio-1295, 110 N.E.3d 705 (8th Dist.), the applicant followed a similar course as Hawk, submitting three applications for approval to create additional lots. *Id.* at ¶ 3. The first application was submitted in early 2015, was conditionally approved months later in May 2015, and was then denied in January 2016. *Id.* A second application was submitted in February 2016, but needed to be corrected, and a third revised application was submitted in March 2016. *Id.* at ¶ 4-5. When the third application was not timely acted upon, the applicant's counsel made a formal written demand for a " 'certificate in lieu of endorsement of approval' " under R.C. 711.09(C). *Id.* at ¶ 6. After the demand was rejected, the applicant filed suit. *Id.* at ¶ 6-7.

{¶ 37} The trial court granted a declaratory judgment, finding that the planning commission had failed to comply with the time limit in R.C. 711.09(C) and that the applicant was entitled to a certificate of approval as stated in the statute. *Id.* at ¶ 10. On further appeal, the Eighth District Court of Appeals agreed.

{¶ 38} At issue on appeal was whether R.C. 711.09(C) applied only to village planning commissions rather than city planning commissions, and if not, whether the city's

---

[2] R.C. 711.10 applies to county and regional planning commissions. R.C. 711.10(C) is similar to R.C. 711.09(C) in imposing a 30-day time-limit for endorsing approval or refusing to approve a plat. The difference is that, under R.C. 711.10(C), regional and county planning commissions are allowed to grant "conditional approval" – a choice not specifically given to city planning commissions by R.C. 711.09(C).

subdivision regulations prevailed by virtue of home rule. *Id.* at ¶ 17. The court of appeals first found that, under a plain reading of the statute, "the remedial provisions of R.C. 711.09(C) apply to both cities and villages." *Id.* at ¶ 22, citing *C & D Partnership*, 10th Dist. Franklin No. 82AP-919, 1983 WL 3718, at *5, fn.1 (Whiteside, P.J., concurring). This reference to the statute's remedial nature weighs against applying equitable defenses in favor of planning commissions. As indicated, these planning statutes are intended to protect developers from "bureaucratic obstructionism." *P. H. English*, 61 Ohio St.2d at 19, 399 N.E.2d 72.

**{¶ 39}** In *Wesolowski*, the city's subdivision rule did not specify a time limit for acting on applications; instead, it was silent. *Wesolowski,* 2018-Ohio-1295, 110 N.E.3d 705, at ¶ 28-29. This clearly differs from the 30-day time limit in R.C. 711.09(C). After considering whether the city's "home rule" regulation was nonetheless valid, the court of appeals held that the subdivision rules did not prevail over R.C. 711.09(C). *Id.* at ¶ 23-31.

**{¶ 40}** "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. Applying these principles, the court of appeals first noted that city planning has long been considered an exercise of police power. *Wesolowski* at ¶ 25-26, citing *State ex rel. Kearns v. Ohio Power Co.*, 163 Ohio St. 451, 460, 127 N.E.2d 394 (1955).

**{¶ 41}** The court of appeals further held that R.C. 711.09 is a general law, and that, while the city's rule was silent as to time, it conflicted with R.C. 711.09(C) based on the

" 'conflict-by-implication test.' "  *Id.* at ¶ 27, *quoting Am. Fin. Servs. Assn. v. Cleveland*, 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776.  "This 'test considers whether an ordinance prohibits that which a statute implicitly permits or, presumably, whether an ordinance allows that which a statute implicitly prohibits.' "  *Id.*, quoting *Viola Park, LTD v. Pickerington*, 5th Dist. Fairfield Nos. 2006 CA 00017, 2006 CA 00030, 2007-Ohio-2900, ¶ 41.  Having found that the ordinance did not prevail, the court upheld the summary judgment in the applicant's favor.  *Id.* at ¶ 38.

{¶ 42} On further appeal, the Supreme Court of Ohio affirmed the judgment.  The court agreed that R.C. 711.09 applies to cities as well as villages.  *Wesolowski v. Broadview Hts. Planning Commission*, 158 Ohio St.3d 58, 2019-Ohio-3713, 140 N.E.3d 545, ¶ 13.  In addition, the court concluded that:

> The ordinance conflicts with the statute because it permits what the statute forbids – a response later than 30 days after the submission of a subdivision request.  Because the city's ordinance is an exercise of police power that conflicts with a state law, the ordinance must give way to the requirements in R.C. 711.09(C).

*Id.* at ¶ 20, citing *Canton*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, at ¶ 9.

{¶ 43} We note that neither decision in *Wesolowski* discussed waiver or laches. However, in light of *Wesolowski's* factual circumstances and the remedial purpose of R.C. 711.09(C), we would be remiss in finding that these doctrines apply here.

{¶ 44} As a final matter, we also note TPC's contention that Hawk is not entitled to relief because Hawk submitted only a preliminary plan and only paid for such.  However, R.C. 711.09(C) does not distinguish between preliminary or final plats.  It refers only to

"the plat." *See P. H. English, Inc. v. Koster*, 11th Dist. Geauga No. 795, 1979 WL 208008, *1 (Jan. 8, 1979), *aff'd*, 61 Ohio St.2d 17, 399 N.E.2d 72 ("The Code does not speak of preliminary or of final plats. It speaks only of plat. It would appear that the requirement for submission of a preliminary plat as a condition precedent to a final plat constitutes permission or license to barter, haggle, or dicker on the terms * * *.").

{¶ 45} In this context, TCP also argued that since Hawk submitted fees for a preliminary plan, it was not entitled to approval of a final plan. However under R.C. 711.09(C), TCP waived any deficiencies in the application by failing to raise them during the 30-day limit for approval.

{¶ 46} Accordingly, we find no merit in TPC's Second Assignment of Error, and it is overruled.

IV. Conflict Between Ordinances and R.C. 711.09(C)

{¶ 47} TPC's Third Assignment of Error states that:

The Trial Court Erred as a Matter of Law in Granting Summary Judgment to Appellees by Determining the Applicable Ordinances Are in Conflict With R.C. 711.09(C) Where They Further Legitimate Planning Purposes.

{¶ 48} Under this assignment of error, TPC argues that its codified ordinances do not conflict with R.C. 711.09, but merely supplement it, and therefore are permissible exercises of its rule-making ability. The trial court held that Troy's subdivision regulations conflicted with R.C. 711.09(C) because they failed to impose a deadline for action and theoretically excluded TPC from following any time constraints.

{¶ 49} As TPC notes, regulations of a home-rule city may be upheld if they supplement a state law, rather than conflict with it. *See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 37; *Cleveland v. State*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 16.

{¶ 50} R.C. 711.09(C) gives planning commissions the power to "adopt general rules governing plats and subdivisions of land falling within its jurisdiction in order to secure and provide for the coordination of the streets within the subdivision with existing streets and roads or with the plan or plats of the municipal corporation, for the proper amount of open spaces for traffic, circulation, and utilities, and for the avoidance of future congestion of population detrimental to the public health or safety * * *." Consistent with this power, TPC adopted Chap. 1115 of its Codified Ordinances, which pertains to "Subdivision Procedures."

{¶ 51} Under these procedures, TPC has a two-tiered system covering both approval/disapproval of preliminary plats (Section 1115.09) and approval/disapproval of final plats (Section 1115.19). Section 1115.09(c) provides that:

> There shall be no automatic approval of Preliminary Plats, construction plans or final plats due to the passage of time after submittal. Recognizing that there can be many surrounding facts and circumstances influencing the pace at which review and approval may be achieved, the Planning Commission shall process all such applications with diligence and reasonable speed.

{¶ 52} There is no question that this provision conflicts with R.C. 711.09(C), because it bars exactly the scenario the statute contemplates, i.e., that if a planning

commission does not approve or disapprove a plat, it is deemed to have been approved and entitled to recordation. Contrary to TPC's claim, Section 1115.09(c) does not supplement R.C. 711.09(C); it directly conflicts. As a result, we agree that an impermissible conflict exists.

{¶ 53} Furthermore, the fact that TPC has a two-tier system makes no difference. In *P. H. English*, the Supreme Court of Ohio specifically considered such a two-tier system and found that allowing separate 30-day time periods for considering preliminary and final plat plans conflicted with R.C. 711.10. *P.H. English*, 61 Ohio St.2d at 19-20, 399 N.E.2d 72. As previously indicated, R.C. 711.10 and R.C. 711.09 are essentially the same in this regard. The court also stressed that "adoption of a two-step process is not itself unlawful under this statute. The planning commission may still require preliminary and final submissions, as long as the entire process, from filing of the preliminary plat to approval or disapproval of the final plat, is completed within 30 days." *Id.* at 20. *Accord Wesolowski*, 2018-Ohio-1295, 110 N.E.3d 705, at ¶ 30, *aff'd*, 158 Ohio St.3d 58, 2019-Ohio-3713, 140 N.E.3d 545.

{¶ 54} In light of clear authority from the Supreme Court of Ohio, we agree with the trial court that Section 1115.09(c) impermissibly conflicts with R.C. 711.09(C). The Third Assignment of Error, therefore, is overruled.

## V. Conclusion

{¶ 55} All of TPC's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Patrick J. Janis
Jeremy M. Tomb
Jared B. Chamberlain
Hon. Stacy M. Wall